

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-75,705

### EX PARTE JOHN PATRICK FORWARD, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 46706(2) IN THE 252ⁿᵈ JUDICIAL DISTRICT COURT
### FROM JEFFERSON COUNTY

JOHNSON, J., filed a dissenting opinion in which MEYERS, PRICE, and HOLCOMB, JJ., joined.

### D I S S E N T I N G   O P I N I O N

Effective September 1, 1987, the legislature amended the method of calculating release dates

for inmates who are serving consecutive sentences.[1] Before that amendment, consecutive sentences

---

[1] It is well settled that an inmate's eligibility for mandatory supervision is controlled by the mandatory-supervision statute in effect on the date of the commission of the offense for which the inmate is incarcerated. *Ex parte Noyola*, 215 S.W.3d 862, 865 (Tex. Crim. App. 2007); *Ex parte Thompson*, 173 S.W.3d 458, 459 (Tex. Crim. App. 2005); *Ex parte Hall*, 995 S.W.2d 151, 152 (Tex. Crim. App. 1999). At the time applicant committed the aggravated robbery in 1986, Article 6181-1, § 1(4), V.T.C.A., Civil Statutes, provided that, when two or more sentences are to be served consecutively, the aggregate of the several terms shall be considered the term. In 1987, that statute was amended to delete that provision and replace it with language referring to the newly added language of TEX. CODE CRIM. PROC., Article 42.18, § 8(b): TDCJ–SCC (referred to as the Texas Board of Corrections) may not treat consecutive sentences as a single sentence for purposes of parole. *See* Acts 1987, 70ᵗʰ Leg., ch. 384, §§ 2 and 5, eff. Sept. 1, 1987. Article 6181-1 was repealed in 1989 (*see* Acts 1989, 71ˢᵗ Leg., ch. 212, § 3.03, eff. Sept. 1, 1989), although that same legislature also amended the statute without acknowledging the repeal (*see* Acts 1989, 71ˢᵗ Leg., ch. 1229, § 1, eff. Aug. 28, 1989, and Acts 1989, 71ˢᵗ Leg., ch. 785, § 4.18, eff. June 15, 1989). The provision

were aggregated and treated as a single sentence equal to the sum of the consecutive sentences. After the amendment, sentences were no longer aggregated, and an inmate who is serving consecutive sentences is not now eligible for mandatory supervision on any but the last of the consecutive sentences. *Ex parte Ruthart*, 980 S.W.2d 469, 473 (Tex. Crim. App. 1998).

In that amendment, the legislature included a saving clause that provided that this change applied "to a prisoner sentenced to serve consecutive sentences [only] if each sentence in the series is for an offense committed on or after [September 1, 1987]." If any sentence in the series was for an offense committed before September 1, 1987, "the prisoner's eligibility for parole is covered by the law in effect when that offense was committed, and the former law is continued in effect for that purpose." Appellant's older conviction occurred before the effective date, and his later conviction occurred after it. We therefore are instructed by the legislature that the two consecutive sentences are to be treated as a single eighteen-year sentence.

Calculation of the mandatory-release date might thus be a simple thing, except that the same legislature proscribed release on mandatory supervision on or after September 1, 1987, of a prisoner who had been convicted of certain enumerated offenses. Such inmates must serve their sentences day-for-day unless they are paroled. Appellant's first conviction did not disqualify him for release on mandatory supervision at the time he committed the offense, but it now disqualifies him for mandatory supervision on his later conviction. Neither of the 1987 amendments specified how to calculate mandatory-release dates when an ineligible post-1987 offense is to be served consecutively

---

was repealed again in 1991. *See* 72nd Leg., ch. 16, § 10.01(b), eff. Aug. 26, 1991. The current version of § 508.149 excludes from release to mandatory supervision inmates who have previously been convicted of a variety of enumerated offenses, including aggravated robbery. TEX. GOVT. CODE §§ 508.147, 508.149.

The legislature continues to prohibit treating consecutive sentences as a single sentence for purposes of parole. TEX. GOVT. CODE § 508.150 (the current codification of TEX. CODE CRIM. PROC., Article 42.18, § 8(d)(3)).

to an eligible pre-1987 offense.

Four methods of computation are possible.

1.  The sentences are added together and treated as a single sentence that is eligible for mandatory supervision. This method conforms to the legislative instruction that the former law–as to both aggregation and eligibility for release on mandatory supervision–continues in effect, but it appears to violate the provision of the 1987 amendments that restricts eligibility for release for some offenses.

2.  The sentences are added together and treated as a single sentence that is not eligible for mandatory supervision. This method violates *ex post facto* protections by retroactively making appellant's eligible first conviction ineligible.

3.  The mandatory-supervision release date is calculated separately for each sentence. This method violates the provision of the saving clause that the sentences be aggregated into a single sentence, the length of which is the sum of the sentences.[2]

4.  Because appellant's eight-year sentence, if considered alone, has discharged, the new version of § 508.147 applies. This comports with the interpretation apparently favored by TDCJ, but, like method 3, it violates the language of the saving clause.

No plain-language reading of the relevant statutes resolves these conflicts or indicates a legislative intent to apply one of these methods. A review of the audio tapes of the legislative committees that considered the 1987 amendments reveals that a situation such as the one presented here was never discussed. *Ex parte Ruthart*, 980 S.W.2d at 469; *Ex parte Choice*, 828 S.W.2d 5 (Tex. Crim. App. 1992). None of our usual methods of statutory construction enable us to ascertain

---

[2] This is the method that appears to be the choice of TDCJ-SCC.

legislative intent as to this situation, and it appears that the conflicts in this situation can be resolved only by the legislature.

When legislative intent cannot be determined using the usual methods, the United States Supreme Court has for many years applied a doctrine commonly referred to as the Rule of Lenity. *See, e.g., Ladner v. United States,* 358 U.S. 169, 178 (1958)("When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."); *Bell v. United States,* 349 U.S. 81, 83 (1955)(same).[3] Here, legislative intent cannot be ascertained, and the usual methods of statutory construction have proven fruitless. I therefore believe that application of the Rule of Lenity is appropriate. *See Cuellar v. State,* 70 S.W.3d 815, 821-26 (Tex. Crim. App. 2002)( Cochran, J., concurring).

The Rule of Lenity requires application of the first method as the most lenient of the four possibilities. Using the first method of calculation also is consistent with interpreting the phrase "[i]f any sentence in the series is for an offense committed before the effective date of this Act, the prisoner's eligibility for parole is covered by the law in effect when that offense was committed, and the former law is continued in effect for this purpose" as applying to both the non-aggregation statute and the statute that provided that mandatory supervision applied to all sentences other than death.

---

[3]

When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read.

*Bell v. United States,* 349 U.S. 81, 83 (1955)

**Conclusion**

When applicant was sentenced for the aggravated robbery, only "a person under sentence of death" was ineligible for mandatory supervision. Because applicant was eligible for mandatory supervision on that initial sentence, he is likewise eligible for mandatory supervision release on the aggregated sentence. Nothing in the subsequent laws has abrogated the laws in effect at the time of that initial sentence, and the aggregation of both sentences pursuant to the saving clause means that they should be treated as a single sentence for a conviction that is eligible for mandatory supervision.

I conclude that applicant is entitled to relief. Because the previous laws regarding the sentence for the 1986 offense remained in effect, applicant is entitled to have his release date on the aggregated sentence calculated under those laws. Applicant's consecutive sentences should be calculated as an aggregated eighteen-year sentence on which applicant is eligible for mandatory supervision. I respectfully dissent.


Delivered: July 2, 2008
Publish